## MITCHELL *vs.* ALLEN *&* al.

T. J. F. indorsed and delivered a promissory note to W. G. F. and took from him a receipt therefor in which it was stated, that the proceeds were to be paid on certain notes held by F. F.—after which, and prior to payment to F. F., or notice to him of such indorsement, or assent on his part thereto, T. J. F. assigned the note to S. M. and in writing revoked the orders given to W. G. F. regarding its appropriation, and ordered it to be delivered to S. M. In an action of *trover*, brought by S. M. against the assignees of F. F. who had obtained possession of the note, it was *held*, that the property in the note by the first transaction did not pass to F. F. or to W. G. F. as his trustee, but remained in T. J. F.—that he had the legal power of appropriating it at any time before the power granted to W. G. F. had been executed:—and that though S. M. had never had possession of the note, still, he might maintain *trover* for it.

THIS was *trover*, for a note of hand given by one *Daniel Forbes* to *Thomas J. Forbes*, for $535, 98, and was submitted for the opinion of the Court upon the following agreed statement of facts.

The note in question was indorsed and delivered to *William G. Forbes*, Sept. 8, 1832, from whom said *Thomas*, at the time, took the following receipt, *viz.* :  " Received of *Thomas* " *J. Forbes*, a note for $535, 98, signed by *Daniel Forbes*, " the proceeds of which, when collected, I am to apply to the " payment of certain notes given by said *Thomas J. Forbes* to " *Franklin Fling* in *May* last.

" *William G. Forbes.*"

Prior to this, *Thomas* had drawn an order on *Daniel*, in part payment of said note, for $100, in favour of one *William Bradbury*, and for $75 in favour of said *William G. Forbes*, which

had been sent to *Daniel*, but there was no proof that he had accepted them, or that *Bradbury* had any knowledge of the order drawn in his favour, or that *Fling* had any knowledge of the indorsement and delivery of the note to *William G. Forbes* for his, *Fling's*, benefit.

These facts had been disclosed by *Thomas* in an action, the present plaintiff against him, on his being arrested, and carried before two justices of the peace, under the provisions of the statute entitled " An act for the abolition of imprisonment of " honest debtors for debt." Upon the justices' stating their opinion to be, that, he had not divested himself of all interest in said note, he made and executed an assignment of it to the plaintiff, and also wrote upon the receipt aforesaid of *William G. Forbes*, as follows :   " Mr. *William G. Forbes*, please to de-
" liver the within note to *Sylvanus L. Mitchell*, or his agent,
" *Isaac S. Whitman*, I having assigned the same to said *Mitch-*
" *ell* this day ; and I hereby revoke the within directions as to
" appropriation of the note or proceeds.   *September* 11, 1832.
                                    " *Thomas J. Forbes*."

At the time of said examination before the two justices of the peace, and prior to the assignment aforesaid to the plaintiff, *John Appleton, Esq.* being present, notified the justices, and the plaintiff's counsel in that suit, that the assignees of *Fling*, (the defendants in this action,) would accept of, and agree to, the assignment made to *William G. Forbes*, for the benefit of their assignor, and immediately on the same hour communicated what he had done to said assignees, who approved and confirmed his proceedings.

The plaintiff and defendants had both regularly exhibited to *William G. Forbes* the evidences of their respective claims and demanded the note.   He delivered it, with the assent of *Thomas J. Forbes*, to the defendants, on their giving him indemnity against the claim of the plaintiff, and an agreement that its proceeds should be appropriated to the payment of *Fling's* notes.

Judgment was to be entered for the plaintiff or defendants, with costs, as the opinion of the Court should be upon the foregoing facts.

*Kent*, argued for the plaintiff, that as neither *Fling* nor his assignees, had assented to the assignment to *William G. Forbes* at the time of the examination before the justices, *Thomas* had full power to revoke the order previously given to *William*, and to assign the note, as he did, to the plaintiff. What was done by *Appleton* was entirely ineffectual; he having no authority whatever to act for *Fling* or his assignees. He cited the cases of *Foster v. Lowell,* 4 *Mass.* 308; and *Thayer v. Havener,* 6 *Greenl.* 212.

*Starrett* and *Appleton*, for the defendants.

The receipt of *William G. Forbes*, was a virtual assignment of the note to *Fling* and his assigns, and could not be revoked; — at all events, not until they had had a reasonable time to assent to, or to dissent from said assignment. And they having assented within a reasonable time, that assent operated retroactively and took effect from the day of the date of the receipt. *Fling's* assignees also having approved the act of *Appleton* subsequently, was equivalent to prior authority : and the plaintiff, therefore, not only took his assignment after *Fling's*, but after express notice thereof, and therefore acquired nothing under it.

But there was no necessity for express assent to the assignment by *Fling* or his assigns, it will be presumed, it being for their benefit. *Halsey v. Whitney,* 4 *Mason,* 214; 1 *Johns. Cas.* 209; *Ward v. Lewis,* 4 *Pick.* 251; *New-England Bank v. Lewis & al.* 8 *Pick.* 121; *Hall v. Marston,* 17 *Mass.* 579.

Again, this note was a chattel; supposing, therefore, the creditors to have equal rights after notice, then he who first obtained the possession acquired the legal title. *Lanfear v. Sumner,* 17 *Mass.* 110.

They contended further, that the plaintiff never having had *possession* of the note could not maintain *trover* for it.

At a subsequent term the opinion of the Court was delivered by

PARRIS J. — The note in question is claimed by both parties as creditors of *Thomas J. Forbes*. On the 8th of *September*, *Thomas* deposited it with *William Forbes* to collect, with direc-

tions to pay over the proceeds to *Fling*, the defendant's assign-
or. It remained in *William's* hands uncollected and without
any notice having been given to *Fling*, or his assignees, only
three days, until the 11th of *September*, when *Thomas* revoked
his directions as to the appropriation of the proceeds of the
note, and assigned the note itself to the plaintiff. If he had
the power to do this the plaintiff acquired a title to the note
and must prevail.

It is contended, that the transaction between *Thomas* and
*William*, on the 8th of *September*, was such an assignment of
the note as constituted *William* the trustee of *Fling*, and di-
vested *Thomas* of all interest in the note, and power to control
its collection or appropriation. If there was such an assign-
ment as vested the property in *William*, in trust for *Fling*, then
*Thomas* had no remaining interest, and of course could convey
nothing to the plaintiff, and *William*, as the agent or trustee of
*Fling*, would be accountable to him for due fidelity in collect-
ing the note, and for the proceeds when collected.

But we think it is not to be viewed in that light. From the
language of the receipt, it is manifest that the property in the
note did not pass to *William*, either in his own right or as trus-
tee; but remained in *Thomas*. *William* had no interest in the
debt, and consequently could not sue as indorsee. The order
which he held on *Daniel*, might or might not be accepted. If
accepted, his remedy would be against *Daniel* as acceptor; if
not accepted, his remedy would be against *Thomas* as drawer.
The receipt makes no reservation of any claim upon the note
by *William* or by *Bradbury*, arising out of the orders drawn in
their favour by *Thomas*. No person can sue as indorsee, unless
he be the owner of the note, or has some legal or equitable in-
terest therein. *Thatcher v. Winslow*, 5 *Mason*, 58.

It is unnecessary in this case to enter upon an examination
of the question, whether an assent to an assignment, by a credi-
tor who is clearly to be benefited thereby, may be presumed so
as to render the assignment valid against subsequent attaching
creditors, as there was here no attempt to assign. No words
of assignment or conveyance are used. The defendants' coun-
sel contended, that an assent may be presumed, and cited a

number of cases in support of his position. From the case of *Russell v. Woodward.* 10 *Pick.* 408, it would seem, that in *Massachusetts* an assignment would not be valid to pass the property, unless there be an express assent by the creditor, who claims under it.

Suppose, instead of a note *Thomas* had deposited some article of merchandize with *William*, with directions to sell it, and pay the proceeds to the defendant in this action. In what capacity would *William* act in making the sale? Undoubtedly as the agent of *Thomas*. The latter would be considered as the vendor and accountable as such to the purchaser. Until the sale, the chattel would be liable to attachment by the creditors of *Thomas*, and he might revoke his direction to sell, or in the case of the note, to collect and appropriate at any time before the power granted had been executed ; — as in *Bristow v. Taylor*, 2 *Stark. Rep.* 50, where partners, on the dissolution of their partnership, empowered an agent to receive and pay the joint debts due to and from the partnership, and a debtor to the firm acceded to the arrangement and promised payment of his debt to the agent, yet it was held that one of the partners, before payment of the debt, might countermand the authority to receive it.

Neither does the principle apply in this case which was recognized in *Lanfear v. Sumner*, 17 *Mass.* 110, cited in the argument, that where the same goods are sold to two different persons by conveyances equally valid, he who first lawfully acquires the possession, will hold them against the other. Here is a sale to one person only, and the purchaser is attempting to recover the article sold, from those who obtained possession from the vendor's agent after his authority, as such, had been revoked, and they knew it.

By the assignment of the 11*th September*, the general property in the note passed to the plaintiff; and as he has proved a conversion by the defendants, he is entitled to a remedy under this form of action, although the note did not actually come into his possession. 2 *Saund.* 47, *a, note* 1 ; *Bac. Abr. Trover, C.* ; 1 *Chitty Pl.* 150.